Pamelyn **VLASAK, Petitioner–Appellant,**

v.

**SUPERIOR COURT OF CALIFORNIA, for the County of Los Angeles, Respondent–Appellee.**

No. 02–55977.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 2003.

Filed May 14, 2003.

Paul Rolf Jensen, Reston, VA, for the appellant.

Rockard J. Delgadillo, Debbie Lew, and Candice Horikawa, Office of the City Attorney, Los Angeles, CA, for the appellee.

Before: T.G. NELSON, SILVERMAN, and McKEOWN, Circuit Judges.

## OPINION

McKEOWN, Circuit Judge:

Petitioner Pamelyn Vlasak seeks habeas relief from her conviction for violating a Los Angeles ordinance prohibiting the pos-

session, during demonstrations, of wooden objects exceeding a certain thickness. Vlasak argues that the ordinance is unconstitutional, both on its face and as applied to her, because it infringes on the First Amendment right to freedom of speech. The district court denied the petition and held that the state court reasonably determined that the ordinance was constitutional. We agree and affirm.

## BACKGROUND

Pierce College, a community college in Los Angeles, invited Circus Vargas to perform on campus. Pamelyn Vlasak, an actor, registered nurse, and self-described animal rights educator, went with her husband to the campus to "educate the public to the cruelty that goes on behind the big top." As part of a planned "teach-in," the Vlasaks brought signs, photographs, videotapes, leaflets, and press releases intended for circusgoers. The Vlasaks also brought with them a bull hook—a large piece of wood with a metal hook on the end—as an example of a training device used to gain elephants' obedience.

The Vlasaks joined a group of demonstrators gathered on both sides of the entrance to the parking area. A community college police officer saw the bull hook on the ground, yelled "I've got a weapon here," and called for backup. A scuffle then ensued between campus police and demonstrators, during which the bull hook was seized. Vlasak's husband called the Los Angeles police department to report the seizure of the bull hook. Upon arrival at the scene, the Los Angeles police were apprised of the situation and campus police then arrested Vlasak.

Vlasak was convicted for violating Los Angeles Municipal Code ("LAMC") § 55.07, which prohibits the carrying or possession of certain "demonstration equipment"—rectangular wooden pieces more than 1/4 inch thick and 2 inches wide, or non-rectangular pieces thicker than 3/4 inch.[1] The trial court determined that Vlasak's bull hook was oval shaped and about 1–1/2″ × 1″ thick, exceeding the dimensions permitted by LAMC § 55.07. The trial court offered Vlasak probation, but she elected to receive a 30–day jail sentence.

She appealed to the Appellate Division of the Superior Court. In an unpublished Memorandum Judgment, the court affirmed the conviction, holding that the ordinance was not unconstitutional on its face or as applied and that substantial evidence supported the conviction. After Vlasak made a short detour to federal court with unexhausted claims, the Califor-

---

1. The ordinance reads as follows:

An ordinance amending ... the Los Angeles Municipal Code ... to prohibit the use of certain devices in demonstrations, rallies, picket lines and public assemblies.

DEMONSTRATION EQUIPMENT PROHIBITED:

(a) No person shall carry or possess while participating in any demonstration, rally, picket line or public assembly, any length of lumber, wood, or wood lath unless that object is one-fourth inch or less in thickness and two inches or less in width, or if not generally rectangular in shape, such object shall not exceed three-quarters inch in its thickest dimension.

This ordinance is necessary for the immediate preservation of the public peace, health, and safety, and shall go into effect upon publication.

The reason for this urgency is that street demonstrations have occurred where heavy staffs used for carrying placards have been used as weapons, and have injured members of the police force enforcing laws relating to public assemblies. It is known that additional demonstrations are planned, and in order to protect the police, the general public and persons taking part in the demonstration, this ordinance must go into immediate effect.

LAMC § 55.07.

nia Supreme Court denied her petition for writ of habeas corpus.

Vlasak filed a habeas petition in federal court, in which she challenged the ordinance on its face and as applied, claimed that she was selectively prosecuted for her political beliefs, and argued that the "evidence does not support conviction." The district court denied the petition and the request for a Certificate of Appealability. Vlasak appealed, and we granted a Certificate of Appealability to consider only the First Amendment challenges to the constitutionality of the statute.

## DISCUSSION

■ Vlasak contends that LAMC § 55.07 is unconstitutional because it violates her First Amendment right to freedom of speech. *See* U.S. CONST. AMEND I ("Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble . . . ").[2] She mounts both facial and as-applied challenges to the ordinance.

■ We review de novo the district court's decision to deny Vlasak's habeas petition. *See Killian v. Poole*, 282 F.3d 1204, 1207 (9th Cir.2002). In reviewing the state court's decision, we apply the standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). Because Vlasak's ground for relief concerns a question of law, the state court decision can only be reversed if it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Alvarado v. Hill*, 252 F.3d 1066, 1068 (9th Cir.2001).

■ Vlasak's brief does not frame the arguments in the rubric of the statute.

Rather, she simply argues the legal merits of her case. She does not appear to claim, however, that the state court decision is "contrary to" Supreme Court precedent. To prevail under that provision, Vlasak would need to show that the "state court confront[ed] a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrive[d] at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, —— U.S. ——, ——, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003) (internal quotation marks and citations omitted). Rather, her case fits more neatly under the "unreasonable application" clause: Vlasak must show that the state court identified the correct legal principles, but applied those principles to the facts of her case in a way that was not only incorrect or clearly erroneous, but "objectively unreasonable." *Id.* at 1174–75. It is not enough that our independent review of the legal question leaves us with a firm conviction that the state court decision was erroneous. *Id.* at 1175.

■ We may, however, "grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Id.* Therefore, "[w]hile Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law." *Luna v. Cambra*, 306 F.3d 954, 960 (9th Cir.2002) (internal quotation marks and citation omitted), amended by 311 F.3d 928 (9th Cir.2002).

Here we apply the tests for facial challenges established by the Supreme Court

---

2. The First Amendment applies to the States and their political subdivisions through the Fourteenth Amendment. *Foti v. City of Menlo Park*, 146 F.3d 629, 634 n. 4 (9th Cir.1998).

in *Broadrick v. Oklahoma*, 413 U.S. 601, 612–13, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), and *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). We invoke the principles for as-applied challenges set forth in *Texas v. Johnson*, 491 U.S. 397, 403, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), and *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). We also look to our own factually-similar cases for guidance in applying these tests. *See, e.g., Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 862 (9th Cir.2001) (reviewing a facial challenge to an ordinance prohibiting affixing placards or signs to wooden or plastic supports during demonstrations).

## I. FACIAL CHALLENGE

■ To undertake a facial challenge, Vlasak must demonstrate as a threshold matter that the ordinance, by its terms, seeks to regulate either "spoken words" or "patently' expressive or communicative conduct.'" *Roulette v. City of Seattle*, 97 F.3d 300, 303 (9th Cir.1996) (quoting *Broadrick*, 413 U.S. at 612–13, 93 S.Ct. 2908). Because the ordinance at issue here, by its terms, regulates "demonstration equipment" and arguably constrains "communicative conduct" of the demonstrators, we may consider a facial challenge to LAMC § 55.07. *See Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) ("The protected expression that inheres in a parade is not limited to its banners and songs ... for the Constitution looks beyond written or spoken words as mediums of expression."); *Edwards*, 262 F.3d at 862–63 (entertaining a facial challenge against an ordinance prohibiting affixing placards or signs to wooden or plastic supports during demonstrations).

■ An ordinance is facially unconstitutional if (1) "it is unconstitutional in every conceivable application" because it is "vague or impermissibly restricts a protected activity" or (2) "it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." *Foti v. City of Menlo Park*, 146 F.3d at 635 (internal quotation marks and citation omitted). Vlasak challenges LAMC § 55.07 on both vagueness and overbreadth grounds.

## A. VAGUENESS

Supreme Court precedent forecloses Vlasak's argument that the ordinance is facially unconstitutional because it does not define the words "public assembly" or "demonstration." These are not oblique or ambiguous terms, particularly in the specific context of the ordinance. Indeed, Vlasak was on campus "to make a political point," to assemble with others gathered in the parking lot, and to demonstrate her disdain for circus practices.

■ The Supreme Court has rejected vagueness challenges to statutes and court orders that contain the same, or similar, terms. *See Schenck v. Pro–Choice Network of W. New York*, 519 U.S. 357, 383, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) (upholding the term "demonstrating" against a vagueness challenge); *Cameron v. Johnson*, 390 U.S. 611, 615–16, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) (rejecting the contention that a statute prohibiting "picketing or mass demonstrations" was unconstitutionally vague). Like the petitioners in *Schenck*, Vlasak is, at the very least, an individual of "ordinary intelligence" and as such the ordinance gave her "a reasonable opportunity to know what is prohibited." *Schenck*, 519 U.S. at 383, 117 S.Ct. 855 (internal quotation marks and citations omitted). Taken as a whole, LAMC § 55.07 defines "the criminal offense with

sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

## B. OVERBREADTH

 In *Broadrick,* a leading case addressing the contours of overbreadth, the Supreme Court held that, "where conduct and not merely speech is involved, we believe that the over-breadth of a statute must not only be real, but substantial as well, judged in relation to [its] plainly legitimate sweep." *Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908.[3] As examples of the ordinance's overbreadth, Vlasak points out that it could ban demonstrators from using canes, brooms, crutches, or a large wooden crucifix.[4] But this small list does not, without more, demonstrate substantial overbreadth: the ordinance need not be "discarded in toto because some persons' arguably protected conduct may or may not be caught or chilled by the statute." *Id.* at 618, 93 S.Ct. 2908. Rather than conjure up hypotheticals, we must consider whether the restrictions the ordinance imposes on the manner of protected speech are (1) content-neutral; (2) narrowly tailored to serve a significant governmental interest; and (3) leave open ample alternative means of communication. *Edwards,* 262 F.3d at 862 (citing *Frisby v. Schultz,*

487 U.S. 474, 481, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)); *see also Ward,* 491 U.S. at 791, 109 S.Ct. 2746 (stating the identical test).

 Vlasak argues that LAMC § 55.07 is not content-neutral because it was enacted in response to particular political demonstrations during the late 1970s. Nonetheless, "the contention that a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of partisans on one side of a debate is without support." *Hill v. Colorado,* 530 U.S. 703, 724–25, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). By its terms, the ordinance applies to all demonstrators, regardless of persuasion, viewpoint, or cause. Its self-avowed purpose is to protect police and demonstrators alike, and so "it is justified without reference to the content of regulated speech." *Id.* at 720, 120 S.Ct. 2480.

Los Angeles has a "substantial interest in safeguarding its citizens against violence." *Edwards,* 262 F.3d at 863 (citing *Hill,* 530 U.S. at 715, 120 S.Ct. 2480). The same is true for its interest in protecting its police force. Relying on *Edwards,* Vlasak argues that the city has not put forth "tangible evidence" that a threat to safety exists requiring the precise restrictions in LAMC § 55.07. The tangible evidence is supplied by the ordinance itself, which explains that it was enacted because police officers had been injured by large wooden sign poles in prior demonstrations. This

---

3. Vlasak also makes the related argument that the ordinance is underinclusive because it would still permit the possession of non-wooden objects larger than its dimension restrictions. Because the ordinance is tailored to the problem the Los Angeles City Council sought to address, "heavy staffs used for carrying placards," the ordinance's underinclusiveness does not render it unconstitutional. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 52–53, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) ("That [the city] first chose to address the potential problems created by one

particular kind of adult business in no way suggests that the city has 'singled out' adult theaters for discriminatory treatment.").

4. Vlasak also asserts that pencils, for example, would be prohibited under LAMC § 55.07 because they are thicker than one-half inch. The ordinance, however, only prohibits "non-rectangular" wooden objects that "exceed three-quarters inch in [their] thickest dimension," so demonstrators are free to carry ordinary pencils and pens.

sequence stands in contrast to the ordinance in *Edwards* where the city did "not cite to any parade or public assembly prior to the passage of the ordinance." 262 F.3d at 864.

In *Edwards,* we specifically referred to LAMC § 55.07 as an example of the sort of ordinance narrowly tailored to meet the substantial interest in public safety, unlike the broader ban on all signs attached to wooden or plastic handles that we reviewed in that case: "While the Los Angeles ordinance [§ 55.07] does have an impact on expressive conduct, it uses less restrictive means . . . . [It] makes parades and large public gatherings safer by banning materials that are most likely to become dangerous weapons without depriving the city's residents of the· opportunity to parade or protest with 'traditional' picket signs." *Id.* at 866; *see also People v. Dury,* 199 Cal.Rptr. 577, 578–79 (1983) (upholding LAMC § 55.07 against First Amendment challenges). The dimension restrictions in § 55.07 are "not substantially broader than necessary to achieve the government interest." *Foti,* 146 F.3d at 641 (quoting *Ward,* 491 U.S. at 800, 109 S.Ct. 2746).

Nor can it be said that the ordinance deprives demonstrators of alternative means of communication. Unlike the ordinance in *Edwards,* LAMC § 55.07 permits demonstrators to post signs on wooden sticks of any length—so long as the sticks do not exceed the thickness dimensions— enabling them to "project[ ] a message above the heads of the crowd to reach spectators, passersby, and television cameras stationed a good distance away." *Edwards,* 262 F.3d at 867. The ordinance does not prohibit leaflets, photographs, mega-phones, or a panoply of other devices used for getting attention during picketing or demonstrations. The ordinance preserves the demonstrators' right to "reach the minds of willing listeners" through an "opportunity to win their attention." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 655, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (internal quotation marks and citations omitted). Vlasak's facial challenge cannot be sustained.

## II. AS-APPLIED CHALLENGE

Vlasak's as-applied challenge appears to conflate her argument that the ordinance is unconstitutional as specifically applied to her and her claim of selective prosecution. Under the "as applied" heading, her brief focuses almost exclusively on her claim that she "was prosecuted and others were not."

She requests that we remand for a hearing on this selective prosecution allegation. We lack jurisdiction to consider this claim because we declined to grant a Certificate of Appealability with regard to this issue. *See Beaty v. Stewart,* 303 F.3d 975, 984 (9th Cir.2002). To the extent that Vlasak may be arguing that the enforcement of the ordinance against her was, in effect, a content-based "policy," we address the issue in the framework of the Certificate of Appealability, considering only "[w]hether L.A. Muni Code 5507 is unconstitutional as applied to [Vlasak]."

The First Amendment extends to Vlasak's possession of the bull hook during the demonstration because she had "[a]n intent to convey a particularized message" and "the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson,* 491 U.S. at 403, 109 S.Ct. 2533 (internal quotation marks and citation omitted). The city argues that mere possession of the bull hook was not expressive conduct because the circus attendees to whom Vlasak was trying to communicate wouldn't know what it was. But we must view Vlasak's acts in their context, not in isolation. *Id.* at 405,

109 S.Ct. 2533. Passersby would understand the purpose of the bull hook because, as the police officers testified, Vlasak stood with the bull hook in one hand and pictures in the other showing the hook being used on elephants. Vlasak's message blended the physical demonstration of the hook with its photographic depiction. Her apparent argument is that her prosecution under the ordinance was related to her protected symbolic speech.

■ Still, the government interest at stake here—the safety of police, demonstrators, and the public—is "unrelated to the suppression of free expression," and thus the sufficient importance of that governmental interest in regulating nonspeech aspects of Vlasak's conduct "can justify incidental limitations on First Amendment freedoms." *Id.* at 407, 109 S.Ct. 2533 (internal quotation marks and citations omitted). The test applied in such situations— set forth in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)—is nearly identical to the time, place and manner test for facial challenges. *See Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 299 n. 8, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *Ward,* 491 U.S. at 798, 109 S.Ct. 2746.

■ Under the *O'Brien* test, the ordinance withstands an as-applied challenge if (1) it is within the constitutional power of the government; (2) it furthers an important or substantial government interest; (3) the government interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. 391 U.S. at 377, 88 S.Ct. 1673.

As applied to this situation, the ordinance easily satisfies the *O'Brien* test. The city has constitutional authority to "control the use of its public streets for parades or processions" by imposing "time,

place, and manner" restrictions. *Cox v. New Hampshire,* 312 U.S. 569, 576, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). Likewise, the city has a "substantial interest in safeguarding its citizens against violence." *Edwards,* 262 F.3d at 863. This interest is not related to free expression, the third *O'Brien* factor.

Finally, the ordinance imposed no greater burden than was necessary to protect the safety of circusgoers, police, and demonstrators. Vlasak argues that she should have been permitted to use the best available means of persuasion—the bull hook itself. Although non-wooden replicas and pictures of the bull hook may not have the same impact as the real thing, the potential hazards of wielding what is essentially a heavy wooden club in a crowd during demonstrations justified the relatively small burden imposed on Vlasak by the ordinance. In enforcing the ordinance against Vlasak, the city did not "foreclose an effective exercise of First Amendment rights." *Foti,* 146 F.3d at 642. The fact that Vlasak and her husband brought leaflets, pictures, signs, videotapes, and press releases with them to the demonstration shows that other, less hazardous, but still effective, ways of communicating their message were available. The application of the ordinance to Vlasak did not violate the First Amendment.

Because LAMC § 55.07 is constitutional on its face and as applied to Vlasak, it cannot be said that the state court's denial of relief was an unreasonable application of Supreme Court precedent. The district court's denial of the habeas petition is **AFFIRMED.**