**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GEORGE VILLEGAS, BOB POELKER,
MARCELO ORTA, and DON
DEROSIERS,
          *Plaintiffs-Appellants,*

v.

CITY OF GILROY, and GILROY
GARLIC FESTIVAL ASSOCIATION, INC.,
          *Defendants-Appellees.*

No. 05-15725

D.C. No.
CV-01-20720-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
February 16, 2007—San Francisco, California

Filed April 30, 2007

Before: Ronald M. Gould and Johnnie B. Rawlinson,
Circuit Judges, and Alfred V. Covello,* District Judge.

Opinion by Judge Covello

---

*The Honorable Alfred V. Covello, Senior United States District Judge
for the District of Connecticut, sitting by designation.

## COUNSEL

Randolph M. Hammock, Canoga Park, California, for the plaintiffs-appellants.

Mark L. Strombotne and Bronwen E. Lacey, San Jose, California, for the defendant-appellee City of Gilroy.

Gregory C. Simonian and G. Martin Velez, Daly City, California, for the defendant-appellee Gilroy Garlic Festival Association.

---

**OPINION**

COVELLO, District Judge:

This is an action for damages alleging violations of the plaintiffs' First Amendment constitutional rights incident to their exclusion from a garlic festival. It is brought pursuant to 42 U.S.C. section 1983,[1] and article I, section 2 of the state of California's constitution and California's civil rights act, section 51 et seq. of the California Civil code.[2] George Villegas and others, members of the Top Hatters Motorcycle Club (hereinafter "plaintiffs"), appeal the district court's grants of summary judgment in favor of the City of Gilroy ("City") and the Gilroy Garlic Festival Association ("GGFA"), on the plaintiffs' claims brought pursuant to 42 U.S.C. section 1983.

The issues presented are: 1) whether the act of wearing vests adorned with a common insignia is sufficient to establish a violation of the First Amendment's right to freedom of expression; and 2) whether the plaintiffs here otherwise engaged in sufficient expressive activity to establish a viola-

---

[1] Title 42 of the United States Code, section 1983, provides a cause of action for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

[2] Having determined that there were no federal constitutional principles compromised here, and having granted the defendants' motion for summary judgment, the trial court declined to exercise jurisdiction over the remaining state law claims and ordered them dismissed. The plaintiffs have not appealed this ruling.

tion of the First Amendment's right to freedom of association.[3] For the reasons hereinafter set forth, we affirm the decision of the district court.

## FACTS

Examination of the complaint, pleadings, exhibits accompanying the motion for summary judgment, and the responses thereto, and the testimony submitted to the district court discloses the following undisputed material facts.

On July 28, 2000, the Gilroy Garlic Festival (hereinafter "festival") opened. On July 30, 2000, the plaintiffs, members of a motorcycle club, paid admission and entered the festival grounds. The festival promoted the vegetable garlic and offered many varieties of food and entertainment in a family-friendly atmosphere. The GGFA put on the festival from July 28, 2000, through July 30, 2000, at a public park in the city of Gilroy, California. At the time they entered the festival, the plaintiffs were wearing identical vests adorned with patches. The patches on the back of the vests depicted a skull with wings and a top hat. The vests also included the words "Top Hatters" above the top hat, skull and wings and the word "Hollister" below.[4] The festival promoters had adopted an unwritten festival dress code which provided that persons attending the festival not be permitted to wear gang colors or other demonstrative insignia, including motorcycle club insignia. Upon noticing the plaintiffs' similar dress, Donald Kludt,

---

[3]The trial court also made conclusions of law as to whether a police officer was acting under color of law and whether the Gilroy Garlic Festival, Inc., was a state actor for the purposes of section 1983 liability. In view of our conclusion that no constitutional violation has occurred here, it is not necessary to address these additional issues.

[4]The record includes photographs of the vests. In those photographs, the word California appears at the bottom of the vests. At the time the plaintiffs entered the festival, however, the word Hollister appeared at the bottom of the vests. Sometime between the festival and the time the photographs were taken, the plaintiffs changed this portion of their vests.

an off-duty Gilroy police officer and chair of security for the festival directed another Gilroy police officer, D. Bergman, to escort the plaintiffs back to the gate. Bergman asked the plaintiffs to follow her to the gate. Once the plaintiffs were at the gate, Kludt explained to them the GGFA dress code policy and asked them to remove their vests. The plaintiffs refused. Kludt then directed the plaintiffs to leave the festival. After festival employees refunded their admission, the plaintiffs left.

The stated purpose of the Top Hatters Motorcycle Club was to ride motorcycles and raise money for charities. The club's articles of incorporation further state that its charitable purposes "are to promote good will and understanding among disparate community groups and to raise and distribute funds to other charitable organizations or to needy individuals." When asked, during his deposition, whether the Top Hatters advocated any political, religious, or other viewpoints, appellant Villegas answered "no." Further, with respect to the insignia on the back of their vests, appellant Villegas testified that to him the skull represented "[t]he belief [that] underneath our skin all of us are alike." Villegas further stated that the wings represented freedom and the top hat represented the members of the original Top Hatters Motorcycle Club. Appellant Donald Derosiers stated that to him the skull represented death, the wings represented freedom and the top hat represented those original members of the Top Hatters who are still living. He denied that the Top Hatters attributed any particular meaning to the insignia. To appellant Marcelo Orta, only the top hat had any meaning.[5] Finally, appellant Bob Poelker stated that the insignia signified "whatever you want to interpret it as."

On July 30, 2001, the plaintiffs filed the complaint in this case. On April 24, 2002, and April 29, 2002, respectively, the

---

[5]Orta stated that the only portion of the insignia that had any meaning was the top hat because of the club's name, the "Top Hatters."

City and the GGFA filed motions to dismiss. On August 29, 2002, the district court granted the motions to dismiss. On September 20, 2002, the plaintiffs appealed the district court's dismissal. On March 11, 2004, this court reversed and remanded the case to the district court.[6] On September 13, 2004, the City and GGFA filed motions for summary judgment. On April 5, 2005, the district court granted those motions and rendered judgment in favor of the defendants. On April 18, 2005, the plaintiffs filed a notice of appeal in this case.

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). "The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law." *Id.*

This court must determine whether: 1) a violation of a right secured by the Constitution and laws of the United States has occurred; and 2) the person alleged to have committed the violation acted under color of state law. *See West v. Adkins*, 487 U.S. 42, 48 (1988). In assessing a section 1983 claim on summary judgment, the court must determine whether "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the [defendants'] conduct violated a constitutional right[.]" *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

---

[6]This court reversed because the district court, in granting the motions to dismiss, relied on information in the declarations filed in support of the motions. This court remanded, directing the district court to treat the motions to dismiss as motions for summary judgment. *Villegas v. City of Gilroy*, 90 Fed. Appx. 981, 982 (9th Cir. 2004) (designated not suitable for publication).

## DISCUSSION

### I. *Freedom of Expression*

With respect to the constitutional element of their section 1983 claims, the plaintiffs first allege a violation of their First Amendment right to freedom of expression. The plaintiffs argue that the district court erred when it concluded that the plaintiffs' vests and insignia did not constitute expressive conduct worthy of First Amendment protection. The City and GGFA respond that the plaintiffs' act of wearing their vests to the festival was not sufficient expressive conduct to support a violation of the First Amendment. The district court found that it was unclear what message the plaintiffs intended to convey by wearing their vests, and concluded that no constitutional violation had occurred.

**[1]** The First Amendment specifically forbids the abridgement of speech. U.S. Const. amend. I. The United States Supreme Court has, however, recognized that certain conduct that is "imbued with elements of communication," *Spence v. Washington*, 418 U.S. 405, 409 (1974), may also qualify for First Amendment protection. In *Spence*, the Supreme Court held that when determining whether conduct rises to the level of expressive conduct worthy of First Amendment protection, the court should consider whether "[a]n intent to convey a particularized message was present and [whether] the likelihood was great that the message would be understood by those who viewed it." *Id.* at 410-11; *see also Texas v. Johnson*, 491 U.S. 397, 404 (1989). The Court further stressed the importance of the context in which the symbol is used, noting that "the context may give meaning to the symbol." *Spence*, 418 U.S. at 410.

The plaintiffs cite this court's decision in *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002), for the proposition that a patch on a motorcycle club member's vest constitutes expressive conduct for purposes of the

First Amendment. In *Sammartano*, however, the court did not address the issue of whether the plaintiffs' conduct was sufficiently expressive to warrant First Amendment protection.[7]

**[2]** In this case, the district court correctly applied the test in *Spence* and concluded that the plaintiffs' act of wearing their vests and insignia into the festival did not rise to the level of protected speech for purposes of the First Amendment. The insignia on their vests depicted a skull with wings on either side and a top hat. All of the members of the plaintiffs' motorcycle club had different interpretations of the meaning of their club insignia. As appellant Poelker stated, the insignia signified "whatever you want to interpret it as." Even amongst themselves, the plaintiffs could not agree on a common theme or message that they sought to convey by wearing their vests and insignia. There is nothing in the record tending to establish such a common message. The district court was, therefore, correct in concluding that the plaintiffs vests did not manifest an "intent to convey a particularized message." *Spence*, 418 U.S. at 410-11.

**[3]** In addition, there is little likelihood that any message would be understood by those viewing the plaintiffs' vests and, further, the context in which the plaintiffs' alleged expression took place does not add any additional meaning to

---

[7]In *Sammartano*, members of certain motorcycle clubs were not permitted into courtrooms of a government building without removing their vests and/or jackets adorned with club insignia. 303 F.3d at 962-63. When they refused to remove them or leave the premises, they were arrested for trespass. *Id.* The club members filed a section 1983 action, alleging violations of their First Amendment rights. *Id.* at 964. The district court denied their motion for a preliminary injunction and this court reversed. *Id.* at 975. This court applied the standard for injunctive relief, that is, (1) the likelihood of success on the merits and the possibility of irreparable harm, or (2) the presence of serious questions and a balance that tips in favor of the movant. *Id.* at 965. Although this court found the standard satisfied for purposes of the preliminary injunctive relief sought, *id.* at 974, this court did not address the question of whether the plaintiffs' vests qualified as expression for purposes of the First Amendment.

their symbol. The plaintiffs attended an annual festival centered around garlic that offered many varieties of food and entertainment in a family-friendly atmosphere. Nothing about the festival would tend to give any further meaning to the plaintiffs' act of wearing their vests and common insignia. As this court has recognized, context is crucial when determining whether conduct rises to the level of expression for purposes of the First Amendment. *Spence*, 418 U.S. at 410; *see also Vlasak v. Superior Court of California*, 329 F.3d 683, 690-91 (9th Cir. 2003).[8] In this case, the plaintiffs' act of wearing their vests adorned with a common insignia simply does not amount to the sort of expressive conduct protected by the First Amendment right to freedom of speech.[9]

## II. *Expressive Association*

[4] Also within the ambit of First Amendment protection are the rights to freedom of intimate association and expressive association. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). The plaintiffs argue that the district court erred when it concluded that because the plaintiffs were not engaged in expressive conduct, they did not have a right to expressive association.

The plaintiffs cite *United States v. Rubio*, 727 F.2d 786, 791 (9th Cir. 1984), for the proposition that they are entitled to relief on their First Amendment freedom of association claim. In *Rubio*, this court concluded that the Hells Angels

---

[8]In *Vlasak*, this court found the appellant's conduct to be expressive for purposes of the First Amendment where the appellant stood outside of a circus holding a bull hook in one hand and a picture of the hook being used on elephants in the other. *Vlasak,* 329 F.3d at 686, 690-91. The court concluded that a person passing by would understand the purpose of the bull hook because of the photographs. *Id.* at 691.

[9]The plaintiffs further state that the dress code at issue was unconstitutionally vague and overbroad. Neither the district court nor the appellees in this case have addressed this purported facial attack on the dress code policy and the complaint does not contain such an allegation.

motorcycle club had a First Amendment right to freedom of association. That case, however, was decided prior to the Supreme Court's decision in *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), *infra*, and the *Rubio* panel did not address the requirement of expressive activity as an incident to a claim of freedom of association.[10]

The United States Supreme Court has recognized that "implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Boy Scouts*, 530 U.S. at 647 (citation omitted). In order to support a claim for such association, the "group must engage in some form of expression, whether it be public or private." *Id.* at 648. In *Boy Scouts*, the Court held that the Boy Scouts organization engaged in expressive activity where their general mission was "to instill values in young people." *Id.* at 649-50. The Boy Scouts' official policy was that homosexuality was "inconsistent with the values it seeks to instill in its youth members." *Id.* at 654. The Court held that applying New Jersey's public accommodations law to require the Boy Scouts to readmit James Dale, a homosexual male, as an assistant scoutmaster violated the Boy Scouts' First Amendment right to freedom of association. *Id.* at 644. The Court stated that "the presence of Dale as an assistant scoutmaster would just as surely interfere with the Boy Scouts' choice not to propound

---

[10]*Rubio* was a criminal case in which the appellant argued that a search warrant, which authorized the seizure of "indicia of membership in or association with the Hell's Angels [Motorcycle Club]," violated his First Amendment right to freedom of association. *Rubio*, 727 F.2d at 790. This court summarily concluded that the First Amendment protected the Hells Angels' right to associate with one another but went on to state that the criminal investigation was not prohibited where it interfered with First Amendment interests. *Id.* This court did not analyze the issue of whether the Hells Angels engaged in sufficient expressive activity. As a result, the *Rubio* decision contains no factual background and/or analysis as to the nature and purpose of the Hells Angels motorcycle club.

a point of view contrary to its beliefs." *Id.* at 654. The Court recognized that "associations do not have to associate for the 'purpose' of disseminating a certain message in order to be entitled to the protections of the First Amendment. An association must merely engage in expressive activity that could be impaired in order to be entitled to protection." *Id.* at 655.

**[5]** In *IDK, Inc. v. Clark County*, 836 F.2d 1185 (9th Cir. 1988), this court recognized that "[t]he First Amendment's freedom of association protects groups whose activities are explicitly stated in the amendment: speaking, worshiping, and petitioning the government." *Id.* at 1192 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-23 (1984)). We do not have such activity in this case.

**[6]** The plaintiffs were members of a motorcycle club whose stated purpose was to ride motorcycles, promote good will among disparate community groups and raise money for charities. When asked, during his deposition, whether the plaintiffs advocated any political, religious, or other viewpoints, appellant Villegas answered "no."

**[7]** There is no evidence that the plaintiffs' club engaged in the type of expression that the First Amendment was designed to protect. As the Supreme Court stated, an organization must "engage in expressive activity that could be impaired in order to be entitled to protection." *Id.* at 655. Here, the plaintiffs were not engaged in any sort of "expressive activity that could be impaired." *Id.* Further, even if this court were to conclude that the plaintiffs' charity work and their promotion of goodwill among disparate community groups amounts to sufficient expressive activity,[11] there is no evidence that at the time they

---

[11]In *Boy Scouts*, the Court stated that "[i]t seems indisputable that an association that seeks to transmit such a system of values engages in expressive activity." *Id.* at 650 (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 636 (1984) (O'Connor, J., concurring) ("Even the training of outdoor survival skills or participation in community service might

entered the festival, the plaintiffs were engaged in such activities. In addition, there is no evidence in this case that the defendants' actions in any way violated the plaintiffs' right to associate with one another or to pursue their stated purposes of riding motorcycles, giving to charity and promoting good will.[12] The defendants' refusal to permit the plaintiffs access to the festival only limited the plaintiffs' access to a particular location; a location that had no relation to the purposes underlying their association with one another.

   [8] The court concludes that the plaintiffs did not engage in the kind of expressive conduct that would support a violation of the First Amendment's right to freedom of association.

   AFFIRMED.

---

become expressive when the activity is intended to develop good morals, reverence, patriotism, and a desire for self-improvement."). In this case, although the plaintiffs performed community service, there is no evidence that their purpose in doing so was to transmit a system of values within their organization.

   [12]In *Boy Scouts*, the Court recognized expressive activity in the organization's purpose of "instill[ing] values in young people" where the interpretation of and interference with those values were directly in issue because of the defendants' actions.