**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANGEL SOTO,

*Plaintiff-Appellant*,

v.

UNKNOWN SWEETMAN, ADOC Sgt. at SMU II Browning Unit; UNKNOWN ZAMORA, ADOC CO II at SMU II Browning Unit; UNKNOWN HARRIS, ADOC CO II at SMU II Browning Unit; UNKNOWN JONES, ADOC CO II at SMU II Browning Unit; UNKNOWN SCHELL, ADOC CO II at SMU II Browning Unit; UNKNOWN EMORE, ADOC CO II at SMU II Browning Unit; UNKNOWN VICTORIA, ADOC Sgt. at SMU II Browning Unit; UNKNOWN BOPE, ADOC CO II at SMU II Browning Unit; UNKNOWN SWANEY, ADOC Sgt. at SMU II Browning Unit; UNKNOWN MCCLELLAN, ADOC Sgt. at SMU II Browning Unit,

*Defendants-Appellees.*

No. 16-15497

D.C. No.
2:14-cv-01323-SMM

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, Senior District Judge, Presiding

Argued and Submitted December 5, 2017
San Francisco, California

Filed February 9, 2018

Before:  Susan P. Graber and N. Randy Smith, Circuit
Judges, and Lee H. Rosenthal,[*] Chief District Judge.

Opinion by Chief District Judge Rosenthal;
Dissent by Judge N.R. Smith

---

[*] The Honorable Lee H. Rosenthal, Chief United States District Judge
for the Southern District of Texas, sitting by designation.

# SUMMARY[**]

## Prisoner Civil Rights

The panel affirmed the district court's summary judgment in an action brought by an Arizona state inmate pursuant to 42 U.S.C. § 1983 alleging excessive-force and sexual-assault claims against ten Arizona Department of Corrections officers.

The district court found that the two-year statute of limitations barred plaintiff's claims because his claims accrued in 2010 when the alleged incident occurred but he did not sue until 2014. Plaintiff argued that his claims did not accrue until 2014, because he was told that the Criminal Investigation Unit needed to complete its investigation before he could file an administrative grievance. Plaintiff did not hear from the Criminal Investigation Unit until 2014, at which point he restarted the administrative grievance process, exhausted his administrative remedies and filed suit.

The panel first declined to adopt plaintiff's proposed rule that a claim does not accrue until administrative remedies have been exhausted. The panel held that when, as in this case, the inmate knows of the acts when they occurred and knows that he was injured, the claim accrues. The panel held that the administrative exhaustion requirement justifies tolling the statute of limitations, but it does not justify creating a new accrual rule.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that plaintiff was not entitled to equitable tolling because not only did he fail to include any allegations in his 2014 complaint that he could not proceed with the grievance process until the Criminal Investigation Unit completed its investigation, he failed to submit any declaration, affidavit, authenticated document, or other competent evidence to that effect.

Dissenting in part, Judge N. Smith stated that: (1) pro se inmates need not comply strictly with the rule that a party must rely on affidavits, depositions, answers to interrogatories, or admissions to defeat summary judgment; (2) the panel failed to accord plaintiff's statement in his response brief appropriate weight; and (3) viewed in the light most favorable to plaintiff, the evidence in the record showed that he diligently pursued the completion of the Criminal Investigation Unit's investigation.

---

### COUNSEL

Stephen J. Van Stempvoort (argued), Miller Johnson, Grand Rapids, Michigan, for Plaintiff-Appellant.

Michelle C. Lombino (argued), Assistant United States Attorney; Mark Brnovich, Attorney General; Office of the Attorney General, Phoenix, Arizona; for Defendants-Appellees.

---

**OPINION**

ROSENTHAL, Chief District Judge:

Angel Soto, an Arizona state inmate, appeals the district court's grant of summary judgment dismissing his 42 U.S.C. § 1983 excessive-force and sexual-assault claims against ten Arizona Department of Corrections officers. Soto's claims arise from a 2010 incident, but he did not sue until 2014. The district court held that the two-year statute of limitations barred his claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Background

Soto alleged in his June 2014 complaint that, in April 2010, corrections officers beat him, stomped on him, and kicked him in the head while he was on mental-health watch; that the officers strapped him to a gurney and sprayed his body with mace; and that one or more of the officers sexually assaulted him by spraying mace into his rectum. Soto alleged a jaw injury, two broken fingers, and a chin injury requiring stitches. He sued under § 1983, seeking damages for violations of his Eighth Amendment rights.

About a month after the alleged assault, in May 2010, Soto filed a written grievance with the prison, alleging excessive force and sexual assault. Arizona Department of Corrections Order 802 sets out a five-step grievance process. The Order "provides timely administrative remedies to inmate complaints which might otherwise unnecessarily burden the courts." An inmate begins the process by attempting to resolve a grievance informally with prison staff. If that fails, the inmate must submit an informal complaint, or

"inmate letter," to the prison staff within 10 days of the incident that caused the complaint. An officer must respond within 15 days of receiving the inmate letter. The third step requires the inmate to submit a formal grievance to the deputy warden within 5 days of receiving the response. The deputy warden must formally respond within 15 days of receiving the formal grievance. If the deputy warden denies the grievance, the inmate may appeal to the warden within 5 days, and the warden must respond within 20 days of receiving the appeal. Finally, the inmate may appeal the warden's decision to the director of the Department of Corrections within 5 days. The director's decision is the final institutional response and the end of the administrative-remedy process. The inmate may not file suit before that process is exhausted.

Soto did not sue based on the April 2010 alleged assault until June 2014. The issues are when the two-year statute of limitations began to run and when it ended. These issues turn on when Soto's cause of action accrued and whether the statute of limitations was tolled from the date Soto filed his first inmate letter in 2010 to the date he exhausted his administrative remedies in 2014.

In his district court filing responding to the defendants' summary judgment motion, Soto stated that, after he submitted his first inmate letter in 2010, he was sent to the Special Services Unit to document his injuries. He stated that while he was at the Special Services Unit, he was told that the Criminal Investigation Unit would be notified about his complaint and would investigate and that he could continue the grievance process when that Unit completed its investigation. Soto stated that he was told it would take a while for the Criminal Investigation Unit to contact him. He

stated that he did not hear from the Criminal Investigation Unit until January 2014.

In January 2014, nearly four years after the alleged assault, Soto submitted a new inmate letter that restarted the grievance process. In that letter, Soto stated that he had told a corrections officer that he was waiting for someone from the Criminal Investigation Unit to talk to him, and that the officer had told Soto to write down what happened. In February 2014, Soto submitted another inmate letter about the 2010 incident, stating that a Criminal Investigation Unit representative had talked to him on January 24, 2014.

Soto filed a formal grievance in March 2014, the third step in the recommended grievance process. Three days later, Soto received the deputy warden's response that the allegations were determined to be unfounded. Soto promptly appealed to the warden. On April 4, 2014, Soto received a notice from the Criminal Investigation Unit that his sexual-assault allegations had been investigated and deemed unfounded because of insufficient evidence. Several days later, Soto received the warden's denial of his appeal, which he promptly appealed to the director. On May 2, 2014, the director affirmed the warden's decision, the final step needed to exhaust Soto's administrative remedies.[1] Soto filed this suit a month later.

The district court granted the defendants' summary judgment motion, ruling that Soto's claim accrued in April 2010, when the alleged incident occurred and he knew of his injuries, and that Soto was not entitled to equitable tolling

[1] "Defendants concede that Plaintiff ultimately completed the grievance procedure and his grievances were addressed on the merits."

during the three years and nine months before he exhausted his administrative remedies. The district court held that Soto presented no competent evidence that he had to wait for the Criminal Investigation Unit to complete its investigation of his sexual-assault complaint before he could proceed with the grievance process. The district court also held that no competent evidence showed that, during the years Soto was allegedly waiting to hear from the Criminal Investigation Unit, he took any action to follow up on his claim or to ask about the investigation. The district court held that tolling did not apply to extend the limitations period for three years and nine months.

Soto raises two issues on appeal. First, Soto argues that, because the Prison Litigation Reform Act of 1995, as amended, 42 U.S.C. § 1997e, required him to exhaust his administrative remedies before filing, his claims from the 2010 incident did not accrue until he exhausted those remedies in 2014. Second, he argues that, if his claims accrued in 2010, he is entitled to equitable tolling of the limitations period from 2010 until 2014, the period during which he alleges he was exhausting his administrative remedies.

## II. The Legal Standard

We review *de novo* the district court's grant of summary judgment. *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017). "[W]e must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law." *Id.* (alteration in original) (quoting *Ray v. Henderson*,

217 F.3d 1234, 1239–40 (9th Cir. 2000)); *see also* FED. R. CIV. P. 56(a).

## III.  Analysis

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. The required administrative steps "are defined not by the [Act], but by the prison grievance process itself." *Manley v. Rowley*, 847 F.3d 705, 711–12 (9th Cir. 2017) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). "This court has previously emphasized that the [Act] requires only that a prisoner exhaust available remedies, and that a failure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court." *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015).

### A.  When Did Soto's Claims Accrue?

Although state law determines the statute of limitations for § 1983 claims, federal law governs when a claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Accrual is the date on which the statute of limitations begins to run . . . ." *Lukovsky v. City of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). A claim accrues "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)). "[U]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is

the basis of the action." *Lukovsky*, 535 F.3d at 1048 (internal quotation marks omitted).

The Prison Litigation Reform Act's exhaustion requirement barred Soto from filing suit until he had exhausted the administrative remedies specified by the Arizona Department of Corrections. 42 U.S.C. § 1997e(a). Only at that point, Soto argues, did he have a "complete and present" cause of action on which he could file suit and seek relief. Therefore, Soto argues, his claim could not have accrued before exhaustion was complete.

This circuit recognizes the potential unfairness that can result from the intersection of a rule that a claim accrues when the plaintiff knows of the injury and a rule that requires the plaintiff to exhaust administrative remedies before suing on that claim. But exhaustion can take longer than the limitations period, as it did here. Exhaustion under the Prison Litigation Reform Act and limitations bars serve separate and important interests. "The congressional purpose in enacting § 1997e(a)[ is] rooted in conservation of judicial resources through alternative dispute resolution . . . ." *Roles v. Maddox*, 439 F.3d 1016, 1017 (9th Cir. 2006). Exhaustion creates a procedural hurdle for inmates seeking to litigate their claims in federal court, to allow the prison system to act first and to reduce the quantity and improve the quality of prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). Statutes of limitation "ensure that claims are filed before essential evidence disappears." *Belanus v. Clark*, 796 F.3d 1021, 1027 (9th Cir. 2015).

The circuits do not ameliorate the potential unfairness that may arise from the intersection of exhaustion and limitations by delaying accrual until exhaustion is complete. That procedure can so delay limitations as to frustrate the purpose of the limitations period. If, as would occur here under Soto's proposed rule, accrual is delayed for four years after the event and limitations runs two years later, memories would dim, witnesses would be difficult to find, and evidence would grow stale or disappear. The courts that have addressed the issue keep the accrual trigger fixed to the inmate's knowledge of the injurious event. These courts apply equitable tolling to extend limitations while the inmate exhausts his administrative remedies. *See Brown v. Valoff*, 422 F.3d 926, 942–43 (9th Cir. 2005) ("We do not regard the intersection of the exhaustion and statute of limitations requirements as creating a problem for prisoners, however, as we agree with the uniform holdings of the circuits that have considered the question that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process."); *see also Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015); *Gonzalez v. Hasty*, 651 F.3d 318, 324 (2d Cir. 2011); *Clifford v. Gibbs*, 298 F.3d 328, 333 (5th Cir. 2002); *Napier v. Preslicka*, 314 F.3d 528, 534 n.3 (11th Cir. 2002); *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1280 (11th Cir. 2001) (per curiam); *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999) (per curiam).

Soto asks this court to adopt a rule that a claim does not accrue until administrative remedies have been exhausted. He relies primarily on cases involving contract disputes with the United States or suits challenging federal agency actions. These cases are different from cases subject to the Prison

Litigation Reform Act. In *Crown Coat Front Co. v. United States*, 386 U.S. 503 (1967), *superseded by statute on other grounds, as noted in Sikorsky Aircraft Corp. v. United States*, 105 Fed. Cl. 657, 669 (2012), the Supreme Court addressed a government contract requiring a plaintiff to administratively exhaust claims relating to the contract before filing suit. The Court held that the claims did not accrue until the administrative decision was final. *Id.* at 511. But when a plaintiff did file suit, the federal court's role was much more limited than that of a district court asked to adjudicate a prisoner's § 1983 civil rights claims. The court adjudicating the contract dispute reviews only the agency record and determines only whether the administrative decision was arbitrary and capricious. By definition, that cannot be done before the administrative decision has been made. *Id.*; *see also United States v. Suntip Co.*, 82 F.3d 1468, 1476 (9th Cir. 1996) (an action to enforce a contracting officer's decision does not accrue until the officer issues the decision); *Donnelly v. United States*, 850 F.2d 1313, 1319 (9th Cir. 1988) (a quiet-title action against the United States would not accrue until the final agency decision had issued); *Sherar v. Harless*, 561 F.2d 791, 794 (9th Cir. 1977) (a claim for wrongful dismissal from IRS employment did not accrue until the agency's administrative remedies were exhausted and the agency record was complete).

By contrast, the alleged acts of excessive force that the district court examines in a § 1983 prisoner case take place well before the inmate exhausts his administrative remedies and the district court may go well beyond the administrative record in deciding the claim. When, as here, the inmate knows of the acts when they occurred and knows that he was injured, the claim accrues. The exhaustion requirement justifies tolling the statute of limitations, but it does not

justify creating a new accrual rule. The potential unfairness of limitations running during exhaustion is better addressed by equitable tolling.

Soto's claims accrued when the alleged assault occurred in 2010 because he knew of his injuries at that time. The issue is not when the limitations period began, but when it ended.

## B.  Is Soto Entitled to Equitable Tolling?

Federal courts in § 1983 actions apply the state statute of limitations from personal-injury claims and borrow the state's tolling rules. *TwoRivers v. Lewis*, 174 F.3d 987, 991–92 (9th Cir. 1999). Arizona law requires tolling the statute of limitations while a claimant pursues Arizona's prison-grievance process. *See Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 533 (9th Cir. 2011) (order) (citing *Ariz. Dep't of Revenue v. Dougherty*, 29 P.3d 862, 869 (Ariz. 2001)). This circuit has, with other circuits, adopted a mandatory tolling provision for claims subject to the Prison Litigation Reform Act. *See Brown*, 422 F.3d at 942–43.

Soto argues that he is entitled to have the limitations period tolled from the time he began the grievance process in May 2010 to when he completed all five steps in April 2014. Soto argues that after he completed the first two of the five grievance steps in 2010—by attempting informal resolution and submitting an inmate letter—a prison staff member told him that the Criminal Investigation Unit would contact him as part of investigating his sexual-assault claim and that "once [the] investigation was done he could start his grievance process." Soto raised this argument for the first time in his responses to the defendants' summary judgment

motion and to the district court's show-cause order. The district court held that Soto was not entitled to tolling throughout this period because he presented no competent evidence that he was required to wait for the Criminal Investigation Unit to finish its investigation, or that he had done anything to follow up on his sexual-assault claim, including asking about the investigation. We agree.

In *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010), this court emphasized that "an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules. *Pro se* inmates are, however, expressly exempted from this rule." *Id.* (citation omitted). "We have, therefore, held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Id.* This rule exempts *pro se* inmates from *strict* compliance with the summary judgment rules, but it does not exempt them from *all* compliance. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) ("This rule relieves pro se litigants from the *strict application* of procedural rules and demands that a court not hold missing or inaccurate legal terminology or muddled draftsmanship against them." (emphasis added)); *Marrero v. Ives*, 682 F.3d 1190, 1192 (9th Cir. 2012) (even if the petitioner's filings were construed liberally, he still failed to identify evidence supporting his claim).

The dissent argues that the majority is treating Soto as an ordinary *pro se* litigant, not an inmate, in declining to consider his statements in his district court responses as competent summary judgment evidence. We agree that *Ponder* relieves inmates from strict compliance with the

summary judgment rules; the issue is how much *Ponder* relaxes the compliance requirement in this case.

The district court's finding that Soto failed to do what the summary judgment rules, even as relaxed, require does not ignore *Ponder*, but rather applies it. Reading *Ponder* to consider Soto's arguments as competent evidence comes close to exempting *pro se* inmates from any compliance at all. We do not, as the dissent argues, treat Soto as an ordinary *pro se* litigant, much less as a trained attorney. But we do not entirely release him from any obligation to identify or submit some competent evidence supporting his claim for equitable tolling.

This approach does not unfairly require Soto to take steps beyond his knowledge. The district court followed *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), sending Soto a written notice of the requirements for responding to a motion for summary judgment under the Federal Rules of Civil Procedure. The notice given to Soto explicitly told him that:

> [w]hen a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the Defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence

> in opposition, summary judgment, if
> appropriate, may be entered against you.

Docket Entry No. 63 at 2, *Soto v. Ryan* (D. Ariz. 2015) (No. 14-1323).

Not only did Soto fail to include any allegations in his 2014 complaint that he could not proceed with the grievance process until the Criminal Investigation Unit completed its investigation, he failed to submit any declaration, affidavit, authenticated document, or other competent evidence to that effect.

Soto knew how to file a sworn affidavit. He submitted two of his own sworn affidavits with his response to the defendants' motion for summary judgment in this case. The problem is that neither mentioned anything about being told of a need to wait for the Criminal Investigation Unit to investigate to start the grievance process. The affidavits Soto filed in this case did comply with the summary judgment evidence rule, but these affidavits did not include any evidence of the facts that matter here.

The only statements supporting Soto's tolling argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order. In those responses, Soto stated, for the first time, that after he filed the 2010 inmate letter about the alleged assault, he

> was called into [the Special Services Unit]
> Office so that [the Unit] could take pictures of
> all his injuries and was told by [the Special
> Services Unit] that [the Criminal Investigation

Unit] will be notified and that he will be seen
by [the Criminal Investigation Unit] and once
[the Criminal Investigation Unit] investigation
was done he could start his grievance process.

This statement fails to meet the *Rand* notice requirements. It
is not competent evidence that Soto was told that he could not
pursue the grievance process. The written inmate grievance
requirements Soto had used before and used during this
period clearly state that "[u]nless notified of an extension of
time frames, expiration of any time limit for a response at any
stage in the process shall entitle the inmate grievant to move
to the next step in the process." The district court correctly
held that the written grievance policies did not require Soto
to wait for the Criminal Investigation Unit.

The district court was also correct in ruling that no
competent evidence showed that, during the three years and
nine months Soto stated that he was waiting to hear from the
Criminal Investigation Unit, he took any steps to follow up on
his claim or ask about the delay in the investigation. The
record shows that Soto was not doing anything to exhaust his
remedies from May 2010 to January 2014. He failed for
almost four years to question the fact that he had heard
nothing about the Criminal Investigation Unit's investigation.

The summary judgment record includes several letters
Soto wrote to prison staff between 2010 and 2014. In those
letters, Soto wrote that he wanted to talk to the Criminal
Investigation Unit, but he was told it would take some time.
He stated in his December 2012 letter that an unidentified
prison staff member told him "that [the Criminal
Investigation Unit] would come and see me that it takes time
but while I was waiting for [the Criminal Investigation Unit]

to come talk to me one staff member told me it would not be in my best interest to push the issue if I wanted to do my time with no problems." Soto stated in a November 2013 letter to prison officials that he filed grievances, but that "most did not follow through." Soto did write other grievances from August 2012 to April 2014—eight, as the district court noted—but none mentions his sexual-assault or excessive-force claims. Nor did he say anything in the letters he sent in December 2012 or in November 2013 about corrections officers telling him that he had to wait for the Criminal Investigation Unit to complete its investigation before he could proceed with the grievance process. Soto's own letters show that he did not ask about talking to the Criminal Investigation Unit from May 2010 until January 2014.

In short, neither Soto's 2014 complaint allegations, his sworn affidavits, nor the letters and grievances he wrote from 2010 to 2014, provide competent summary judgment evidence that he took any steps to inquire into the delay in hearing from the Criminal Investigation Unit for nearly four years. Even with the relaxed affidavit requirement and *Ponder*'s liberal construction rule, the evidence is not in the record.

Soto's own conduct also undermines his argument that he did nothing for almost four years because he could not pursue his remedies until the Criminal Investigation Unit had finished its investigation. When Soto did eventually exhaust his administrative remedies in 2014, he did not wait for the Criminal Investigation Unit to finish its investigation. Soto made an informal complaint and sent an inmate letter to restart the grievance process in January 2014. He did not wait for the Criminal Investigation Unit to complete its investigation, as he now claims he was told he had to, before

proceeding with the third step in the grievance process by filing a formal grievance in March 2014. Soto did not receive notice that the Criminal Investigation Unit had completed its investigation until April 4, 2014. By then, he had already appealed to the warden, step four in the grievance process.

Contrary to the dissent's assertion, the majority does not improperly weigh evidence or judge credibility. To the contrary, even assuming that Soto's statements in his briefs are competent evidence and viewing that evidence in the light most favorable to Soto, it does not support equitable tolling. The written prison policy, the grievances and letters Soto filed, his own actions, and his district court filings are insufficient to generate or support an inference that he was misled by prison authorities into doing nothing to pursue his grievance for nearly four years, so as to entitle him to equitable tolling for that period.

As the district court noted, during the years of silence from the Criminal Investigation Unit, Soto "could have and should have sought clarification" about the investigation into his claim. Soto offers *no* evidence that during the almost four-year delay, he "took reasonable and appropriate steps to exhaust his . . . claim," but "was precluded from exhausting" by misinformation from prison staff. *See Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (excusing the inmate's failure to exhaust his administrative remedies because he was misled during the process and sent on "an almost ten-month wild goose chase," to the extent that he was precluded from fully exhausting his remedies despite taking reasonable steps to diligently inquire about his claim and the steps needed for exhaustion). Considering the record in its entirety, it is clear that Soto began to exhaust his administrative remedies when he filed his initial inmate letter in May 2010. He then

abandoned the process. He restarted a new grievance process nearly four years later, in early 2014, completing it within four months. No competent record evidence supports his claim that he had to delay for nearly four years or was misled by staff into delaying, or that he was doing anything to follow up or ask about his administrative remedies from mid-2010 to early 2014. We affirm the district court's determination that there is no basis to toll the statute of limitations between June 2010 and January 2014.

This approach is consistent with this circuit's mandatory tolling rule set out in *Brown*, which held that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." 422 F.3d at 943. Soto is entitled to tolling while he was actively exhausting his remedies—between April and May 2010 and January and May 2014. *See, e.g.*, *Gonzalez*, 651 F.3d at 322 ("Our sister circuits . . . [hold] that tolling is applicable during the time period in which an inmate is *actively exhausting* his administrative remedies." (emphasis added) (citing *Brown*, 422 F.3d at 943)). Soto is not entitled to tolling during the time he abandoned the process. Because he is entitled to tolling only from April to May 2010 and January to May 2, 2014, Soto's two-year statute of limitations expired long before he sued. His claims are barred.

## IV.    Conclusion

We affirm the district court's grant of summary judgment.

**AFFIRMED.**

N.R. SMITH, Circuit Judge, dissenting in part:

I must dissent from the majority opinion, because it ignores the summary judgment standard of review, thus granting summary judgment and failing to allow Soto a hearing regarding equitable tolling.[1] Let me explain. First, although the majority cites *Thomas v. Ponder*, 611 F.3d 1144 (9th Cir. 2010), it ignores the language of *Ponder* indicating that pro se inmates need not comply strictly with the rule that a party must rely on affidavits, depositions, answers to interrogatories, or admissions to defeat summary judgment. *See id.* at 1150. Second, it fails to accord Soto's statement its appropriate weight on a summary judgment motion. Third, the majority manufactures an argument, concerning Soto's diligent pursuit of the investigation (a question of fact), that the government never raised on appeal. Based on that manufactured argument, the majority incorrectly concludes that, even if Soto were credited for his statement, there is no evidence in the record showing that Soto diligently pursued the investigation.

---

[1] The factual disputes regarding Soto's claim for equitable tolling can be resolved at a separate evidentiary hearing, or the district court can bifurcate the trial. We have previously approved of a bifurcated trial when there is a genuine dispute of a material fact regarding whether the statute of limitations was tolled. *Burnham Chem. Co. v. Borax Consol.*, 170 F.2d 569, 573 (9th Cir. 1948). We have further held that, "[w]here factual questions not readily ascertainable from the declarations of witnesses or questions of credibility predominate, the district court should hear oral testimony." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 858 (9th Cir. 1992); *Jones v. Cal. Dep't of Corr.*, 584 F. App'x 496, 497 (9th Cir. 2014) (holding that it is an abuse of discretion to fail to hold an evidentiary hearing in such circumstances).

I.

The majority opinion treats Soto like an ordinary pro se litigant rather than a pro se inmate when evaluating his response to the summary judgment motion; our precedent requires otherwise. In *Bias v. Moynihan*, the issue before us was whether the pro se plaintiff had presented sufficient, competent evidence to survive summary judgment. 508 F.3d 1212, 1218–19 (9th Cir. 2007). Bias made several statements in her response brief but did not "go beyond the pleadings and, by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there [was] a genuine issue for trial." *Id.* at 1218 (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Because Bias did not submit any documents opposing summary judgment other than the pleadings, we held that she "failed to demonstrate that there [were] any genuine issues of material facts in dispute." *Id.* at 1219.

Later, we decided *Ponder*, wherein we differentiated between the procedural burden placed on ordinary pro se litigants and the procedural burden placed on pro se inmates when responding to a motion for summary judgment. *Ponder*, 611 F.3d at 1150. In *Ponder*, we cited *Bias* and held that pro se inmates must be treated differently than Bias (an ordinary pro se litigant). *Id.* We noted that "*Bias v. Moynihan*, 508 F.3d 1212 (9th Cir. 2007) holds that an ordinary pro se litigant, like other litigants, must comply strictly with the summary judgment rules. Pro se inmates are, however, expressly exempted from this rule." *Id.* (internal citation omitted). Thus, based on the language of *Ponder*, a pro se inmate (unlike the ordinary pro se litigant in *Bias*) could defeat summary judgment by submitting factual statements in

the inmate's response to summary judgment. The pro se inmate would not be required to file affidavits, depositions, answers to interrogatories, or admissions to defeat summary judgment.[2] The factual statements would instead be treated just like an affidavit for purposes of summary judgment.

In our case, the government moved for summary judgment, claiming that pro se inmate Soto's complaint did not fall within the statute of limitations. In his response brief, Soto argued that he was entitled to equitable tolling, because prison staff provided him with faulty information regarding the grievance process (resulting in a significant delay). In particular, Soto claimed that a member of the prison staff told him that he was required to wait for the Criminal Investigation Unit to complete an investigation of his claim before further pursuing the grievance process.

Contrary to our language in *Ponder*, the majority does not treat this statement like an affidavit, instead holding that the statement is not "competent evidence," i.e., evidence admissible for purposes of summary judgement. *Evidence*, *Black's Law Dictionary* (10th ed. 2014) ("Admissible

---

[2] *Ponder* mandates that "courts should construe liberally motion papers and pleadings filed by pro se inmates *and should avoid applying summary judgment rules strictly*." *Ponder*, 611 F.3d at 1150 (emphasis added). To avoid its application, the majority argues that the issue here is the degree to which *Ponder* relaxes the summary judgment rules for pro se inmates. Maj. Op. at 14–15. The majority asserts that *Ponder* is silent as to this issue. However, *Ponder* provided an answer to the question before us when it cited *Bias*. If we were not bound by precedent, requiring Soto to submit his statement in an affidavit may be a perfectly reasonable requirement to place on a pro se inmate. However, *Ponder* indicated otherwise when it cited *Bias*. Thus, as a three-judge panel, we are not free to revisit the issue.

evidence" is "[a]lso termed competent evidence."). Then, the majority holds that there is no genuine dispute of material fact regarding the statute of limitations or Soto's equitable tolling claim. Maj. Op. at 18–19. Thus, the majority treats Soto as an ordinary pro se litigant, requiring him to submit his statement in an affidavit. In doing so, the majority errs.

## II.

Our precedent is clear; a party's own testimony is sufficient to create a genuine dispute of material fact even when other evidence in the record does not support the facts asserted in the statement. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). As we just recently held,

> We have refused to find a "genuine issue" as to a material fact where the only evidence presented is uncorroborated and self-serving testimony. However, because a party's own testimony will nearly always be "self-serving," the mere self-serving nature of testimony permits a court to discount that testimony where it states only conclusions and not facts that would be admissible evidence.

*Id.* (internal citations, quotation marks, and alterations omitted). Soto's statement recites facts, not legal conclusions, and creates a genuine dispute of material fact. "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence, as those are functions reserved for the jury." *Id.* (internal citation, quotation marks, and alterations omitted). Thus, because Soto's statement is admissible for purposes of

summary judgment, the majority cannot weigh the statement based on other evidence in the record. *Id.*

Contrary to this bedrock principle of summary judgment, the majority cites evidence in the record in an attempt to weigh and undermine Soto's statement. First, the majority attacks the statement by noting that Soto failed to include the statement as an allegation in his complaint. Maj. Op. at 16. Second, the majority continues its attack when it notes that "Soto knew how to file a sworn affidavit," but did not include the statement in either of the affidavits he submitted. Maj. Op. at 16. Third, the majority attacks the statement's reliability when it points to the fact that "the written grievance policies did not require Soto to wait for the Criminal Investigation Unit." Maj. Op. at 17. The legal significance of Soto's statement cannot be extinguished by pointing to competing evidence in the record, because we may not weigh evidence at summary judgment. *Manley*, 847 F.3d at 711. Thus, the majority errs.

## III.

Lastly, to buttress its decision to grant summary judgment and thereby deprive Soto of an evidentiary hearing, the majority asserts that, even if the statement were admissible, Soto is entitled to equitable tolling only if he can show that he diligently pursued what he incorrectly believed was the next step in the grievance process. In making this assertion, the majority manufactures an argument the government never made. The government did not argue on appeal that Soto failed to diligently pursue the investigation; the government only argued that Soto's statement was not made in an affidavit. "Generally, an appellee waives any argument it fails to raise in its answering brief." *United States v. Dreyer*,

804 F.3d 1266, 1277 (9th Cir. 2015) (en banc). Thus, this argument (a factual issue) is waived.

In his opening brief, Soto argued that "[t]he statute of limitations is tolled while the prisoner is pursuing the remedies that corrections officers informed were required of him." To support this argument, Soto claimed that "he inquired about the pending [Criminal Investigation Unit] investigation for years, to no avail," and that these efforts "suffice" to meet the "reasonable diligence" required for equitable tolling. The government did not dispute this factual assertion. Again, the government waived the issue of reasonable diligence. *Id.*

The government failed to raise this argument for good reason; viewing the evidence in the light most favorable to Soto (as we must), the evidence in the record is more than sufficient to create a genuine dispute regarding this factual issue. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland v. Florida*, 560 U.S. 631, 653 (2010) (citations and quotation marks omitted). The majority concludes that "Soto's own letters show that he did not ask about talking to the Criminal Investigation Unit from May 2010 until January 2014." To the contrary, Soto's inmate letters show that he pursued the investigation, that he was told it would take some time, and that he was threatened on one occasion when he pursued the investigation. Let us examine the evidence. In 2012, Soto wrote, in an inmate letter, that

> [he] was told by [prison] staff that [the
> Criminal Investigation Unit] would come and
> see [him,] that it takes time[,] but that while
> [he] was waiting for [the Criminal

Investigation Unit] to come talk to [him,] one staff member told [him] it would not be in [his] best interest to push the issue if [he] wanted to do his time with no problems.

In his January 2014 inmate letter, Soto wrote that he "kept telling [prison staff] that [he] was still waiting on [the Criminal Investigation Unit]." Thus, viewed in the light most favorable to Soto, the evidence in the record shows that Soto diligently pursued the completion of the Criminal Investigation Unit's investigation.