**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUIS CARDENAS-ORNELAS, | No. 24-6755 |
| *Plaintiff - Appellee*, | D.C. No. 2:21-cv-00030-ART-MDC |
| v. | |
| CALVIN JOHNSON; HAROLD WICKHAM; CHARLES DANIELS; GARY PICCININI; TIMOTHY STRUCK; ROBERT OWENS; JESSIE BRIGHTWELL; MANUEL PORTILLO; TIMOTHY JOHNSON, | OPINION |
| *Defendants - Appellants*, | |
| and | |
| J. ALCOCK, JULIO CALDERIN, | |
| *Defendants*. | |

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

Argued and Submitted October 9, 2025
Las Vegas, Nevada

Filed January 29, 2026

Before: Mark J. Bennett, Gabriel P. Sanchez, and Holly A. Thomas, Circuit Judges.

Opinion by Judge Bennett

## SUMMARY[*]

### Qualified Immunity

The panel affirmed in part and reversed in part the district court's denial, on summary judgment, of qualified immunity to Warden Calvin Johnson in an action brought pursuant to 42 U.S.C. § 1983 and state law by Luis Cardenas-Ornelas, a Nevada state prisoner, alleging constitutional violations in connection with his quarantine during the COVID-19 pandemic.

Cardenas-Ornelas alleged that during the COVID-19 pandemic staff at High Desert State Prison denied him outdoor exercise in violation of the Eighth Amendment, despite ordering him to work and permitting yard time for inmates in other units, and treated him and his unit differently from others in violation of the Fourteenth Amendment.

The panel held the district court properly denied Warden Johnson qualified immunity on the Eighth Amendment claim. At the time of the alleged deprivation, a prisoner's Eighth Amendment right to outdoor exercise or otherwise

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

meaningful opportunities for recreation was clearly established. Viewing the evidence in the light most favorable to Cardenas-Ornelas, he presented sufficient evidence which raised triable issues of fact on both the objective and subjective prongs of his Eighth Amendment claim.

The panel reversed the district court's denial of qualified immunity to Warden Johnson on the Fourteenth Amendment claim. Cardenas-Ornelas did not establish a genuine dispute of material fact because he failed to introduce summary judgment evidence that ruled out every conceivable basis which might support the alleged differences in yard time afforded Cardenas-Ornelas's unit and other units, or Cardenas-Ornelas and other inmates.

The panel addressed Warden Johnson's remaining arguments in a concurrently filed memorandum disposition.

---

## COUNSEL

Allie Zenwirth (argued), Dylan Brenner, Nicholas Castellano, and Sara Orton, Certified Law Students; Aaron Littman, Supervising Attorney; UCLA School of Law, Los Angeles, California; Samuel Weiss, Supervising Attorney, Rights Behind Bars, Washington, D.C.; for Plaintiff-Appellee.

Chris Davis (argued), Deputy Attorney General; Aaron D. Ford, Nevada Attorney General; Office of the Nevada Attorney General, Las Vegas, Nevada; for Defendants-Appellees.

**OPINION**

BENNETT, Circuit Judge:

Luis Cardenas-Ornelas, a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), brought this action pursuant to 42 U.S.C. § 1983, alleging that staff at High Desert State Prison ("HDSP") denied him outdoor exercise in violation of the Eighth Amendment and treated him and his unit differently from others in violation of the Fourteenth Amendment. Cardenas-Ornelas also brought analogous claims under the Nevada Constitution. The district court denied summary judgment on certain of these claims against Warden Calvin Johnson, and Warden Johnson appealed.[1] We affirm in part, reverse in part, and remand.[2]

**I.**

The focus of this appeal is Cardenas-Ornelas's claim that, during the COVID-19 pandemic, HDSP staff denied him outdoor exercise—despite ordering him to work and permitting yard time for inmates in other units. In early 2020, Cardenas-Ornelas was housed at HDSP and assigned to Unit 9, a protective segregation unit. HDSP allowed Unit 9 inmates to work in Prison Industries, where only Unit 9 inmates worked. By working in Prison Industries, eligible inmates could "earn wages and good time credits."

---

[1] The Notice of Appeal was filed by all Defendants. The opening brief makes clear, however, that the only Appellant is Warden Calvin Johnson.

[2] In this opinion, we review the district court's denial of Warden Johnson's assertion of qualified immunity. In a concurrently filed memorandum disposition, we address Warden Johnson's remaining arguments. In that disposition, we affirm in part and reverse in part.

Defendants assert that, during the COVID-19 pandemic, it was possible to carry out social distancing and contact tracing in the enclosed Prison Industries warehouse, but not in the outdoor yard, where inmates from different units mixed freely. Defendants also contend that they disinfected the bays where inmates in Prison Industries worked. But Cardenas-Ornelas claims that he and many other inmates worked in very close quarters.

## A.

In March 2020, Unit 9 was placed on quarantine after a canteen staff member who had been in close contact with Unit 9 inmates tested positive for COVID-19. After that quarantine ended in April 2020, Unit 9 was sent back to work in Prison Industries. Unit 9, however, continued to be denied yard time.

In May 2020, after an inmate tested positive for COVID-19, HDSP locked down. Defendants contend that "inmates could still exercise in their cell." After more inmates tested positive, all were isolated for several weeks. While Unit 9 remained in quarantine without yard time, other units regained yard time.

In December 2020, after some Unit 9 inmates tested positive, Unit 9 was again placed on quarantine but, on several days, was still ordered to work at Prison Industries. Cardenas-Ornelas claims that this was despite HDSP staff's awareness that forty-eight Unit 9 inmates had just tested positive for COVID-19 and that other Unit 9 inmates were exhibiting symptoms.

Cardenas-Ornelas alleges that between March 2020 and July 2021, he was denied almost all outdoor exercise, and

that this caused him anxiety, depression, muscle loss, and joint pain.

**B.**

In June 2020, Cardenas-Ornelas filed an informal grievance alleging the denial of his constitutional rights to exercise and yard time. Sergeant Timothy Struck denied the informal grievance because the lockdowns were needed to protect "the health and safety of all inmates."

In August 2020, Cardenas-Ornelas filed a first-level grievance alleging that he was "confined to [his] cell for 23 to 23 1/2 hours a day except for when [he went] to work which [was] for 8 to 9 hours in a crowded warehouse with about 130 other inmates." Warden Johnson denied the grievance, explaining that "NDOC has not placed any institution on lock-down but has quarantined in an effort to adhere to important Center[s] for Disease Control and prevention guidelines." Addressing Cardenas-Ornelas's working conditions, Warden Johnson noted that "[a]fter receiving medical clearance, Unit 9 inmate workers received authorization to return to work as early as April 27, 2020," and that safety measures were in place to prevent COVID-19 spread in Prison Industries. Addressing the continued denial of yard time, Warden Johnson explained that "[t]he operations of inmates classified to Administrative and Disciplinary segregation continued as normal as possible because they [we]re equipped with the resources needed (rec. cages, locked showers, phone access)," implying that HDSP lacked the resources to provide protective segregation inmates with yard time. Cardenas-Ornelas then filed a second-level grievance, which was denied by Harold Wickham, Deputy Director of Programs for NDOC.

## C.

In January 2021, Cardenas-Ornelas filed a *pro se* complaint under 42 U.S.C. § 1983 and Nevada state law against various HDSP officials, seeking declaratory and injunctive relief and monetary damages. The district court screened the complaint and allowed Cardenas-Ornelas to proceed on several claims, including claims alleging that Defendants' denial of outdoor exercise violated prohibitions against cruel and unusual punishment under the Eighth Amendment, guarantees of equal protection under the Fourteenth Amendment, and analogous protections under the Nevada Constitution.[3]

In October 2023, Defendants moved for summary judgment. As relevant here, the district court denied Warden Johnson summary judgment on Cardenas-Ornelas's outdoor-exercise claims alleging cruel and unusual punishment and equal protection violations.[4] In so doing, the district court denied Warden Johnson's assertion of qualified immunity on those claims. Warden Johnson timely appealed.

---

[3] The other claims that survived screening were: (1) an Eighth Amendment claim based on an alleged policy that required officers to come to work after they reported contact with COVID-19 infected people, (2) a First Amendment claim alleging interference with mail, (3) federal and state free speech claims based on the alleged extended prohibition of all phone calls, and (4) federal and state equal protection claims based on the alleged denial of all phone calls.

[4] On these two claims, the district court granted summary judgment to all Defendants other than Warden Johnson based on their lack of personal participation in the alleged violations. On all other claims, the district court granted summary judgment for Defendants.

## II.

Cardenas-Ornelas contends that we lack jurisdiction over this interlocutory appeal. But because the district court rejected Warden Johnson's assertion of qualified immunity, we have jurisdiction under the collateral order doctrine. *See Johnson v. Myers*, 129 F.4th 1189, 1193 (9th Cir. 2025). Our jurisdiction, however, "does not extend to claims in which the determination of qualified immunity depends on disputed issues of material fact." *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) (per curiam). Thus, in reviewing the district court's denial of qualified immunity, we "assum[e] that the version of the material facts asserted by the non-moving party is correct." *Id.*

We review de novo a district court's grant or denial of summary judgment, "including officers' entitlement to qualified immunity." *Jones v. City of North Las Vegas*, 150 F.4th 1030, 1035 (9th Cir. 2025).

## III.

Warden Johnson argues that he is entitled to qualified immunity on the Eighth Amendment and Fourteenth Amendment claims. We affirm the district court's denial of qualified immunity on the Eighth Amendment claim but reverse the district court's denial of qualified immunity on the Fourteenth Amendment claim.

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages" when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established only when "[t]he contours of the right [are]

sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We therefore must decide "whether 'the officer's conduct violated a constitutional right' and whether 'the right was clearly established' at the time of the alleged misconduct." *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)). Our inquiry may proceed in any order. *Id.*

## A.

On the Eighth Amendment claim, the district court properly denied Warden Johnson qualified immunity. To violate the Eighth Amendment, the prison official's alleged deprivation "must be, objectively, 'sufficiently serious,'" and the "prison official must have a 'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)). "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." *Wilson*, 501 U.S. at 304 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

We start our inquiry by considering whether, at the time of the alleged deprivation, Cardenas-Ornelas had a clearly established right to outdoor exercise under the Eighth Amendment. By 2020, our case law had clearly established a prisoner's Eighth Amendment right to outdoor exercise or otherwise meaningful opportunities for recreation. *See Shorter v. Baca*, 895 F.3d 1176, 1185–86 (9th Cir. 2018)

(collecting cases). "Our case law uniformly stresse[d] the vital importance of exercise for prisoners." *Thomas v. Ponder*, 611 F.3d 1144, 1152 (9th Cir. 2010). We had said that exercise is "one of the basic human necessities protected by the Eighth Amendment." *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). And though on more severe facts, we had held specifically that prisoners were unconstitutionally denied outdoor exercise when they were confined in small cells around the clock for more than four years. *Spain v. Procunier*, 600 F.2d 189, 199–200 (9th Cir. 1979). We therefore hold that, at the time of the alleged deprivation, Cardenas-Ornelas had a clearly established right to outdoor exercise or meaningful opportunities for recreation.

The next question is whether a reasonable jury could find that Warden Johnson violated that clearly established right. We hold that Cardenas-Ornelas presented sufficient evidence which, viewed in the light most favorable to him at summary judgment, raised triable issues on both prongs of his Eighth Amendment claim against Warden Johnson. On the objective prong, evidence supported Cardenas-Ornelas's claim that he was "confined to [his] cell for 23 to 23 1/2 hours a day" except for when he went to work in Prison Industries. And Defendants failed to introduce evidence that recreational opportunities had been afforded to Unit 9 in and after June 2020, while other units were allowed to resume yard time. On the subjective prong, Cardenas-Ornelas introduced evidence supporting his claim that Warden Johnson had a sufficiently culpable state of mind—namely, "deliberate indifference." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quoting *Wilson*, 501 U.S. at 297). "A prison official acts with 'deliberate indifference only if the prison official knows of and disregards an excessive risk to

inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (alterations accepted) (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled in part on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc)). Here, evidence supported the claim that Warden Johnson was subjectively aware of the alleged risk because Warden Johnson responded to Cardenas-Ornelas's first-level grievance, which alleged that Cardenas-Ornelas was being "confined to [his] cell for 23 to 23 1/2 hours a day except for when [he] got to work."[5] Moreover, Warden Johnson ordered Unit 9 inmates to work even as he denied them yard time.

Addressing the objective prong, Warden Johnson asserts that "walking from Unit 9 to the Prison Industries Warehouse" and "work[ing] for eight hours a day, two days a week" constituted "otherwise meaningful recreation" for Cardenas-Ornelas because Prison Industries provided "affirmative programs of training or rehabilitation." This argument relies mainly on *Norbert v. City & County of San Francisco*, 10 F.4th 918 (9th Cir. 2021). In *Norbert*, we affirmed the district court's finding that "inmates were given constitutionally sufficient recreation time" when inmates were "offered at least 30 minutes of exercise time in the [indoor] gyms seven days a week," and "general population inmates c[ould] access the day room for 4.5 hours on weekdays and 8 hours on weekend days." *Id.* at 933. Here,

---

[5] For this reason, Warden Johnson's argument that he was not personally involved in any constitutional violation lacks merit. "[T]his is not a case where the defendants claim that they were unaware of either the circumstances resulting in the alleged deprivation or the likelihood that the deprivation would occur." *Allen v. Sakai*, 48 F.3d 1082, 1088 (9th Cir. 1994).

by contrast, there is no evidence that Unit 9 inmates had *any* access to meaningful opportunities for exercise between March 18, 2020, and July 27, 2021. Viewed in the light most favorable to Cardenas-Ornelas, "sorting cards or hangers" in Prison Industries did not constitute otherwise meaningful recreation. Nor did in-cell exercise. Thus, there is a genuine factual dispute whether the alleged deprivation of exercise was, objectively, sufficiently serious.

Addressing the subjective prong, Warden Johnson argues that he cannot be found to have been deliberately indifferent because he was merely following, and was not required to reexamine, the medical judgments communicated through NDOC's COVID-19 protocols. But there is a factual dispute regarding whether NDOC's COVID-19 protocols required the denial of yard time for Unit 9 inmates for over a year. Moreover, Warden Johnson personally reviewed and denied Cardenas-Ornelas's first-level grievance, which alleged that Cardenas-Ornelas was being confined in his cell "for 23 to 23 1/2 hours a day" except for when he was called to work in Prison Industries. Thus, Warden Johnson failed to show at the summary judgment stage that he is entitled to qualified immunity as an official who was unaware of the prisoner's complaints and merely following NDOC's COVID-19 protocols.

To be sure, even when the alleged deprivation of exercise was, objectively, sufficiently serious, a prison official may still be entitled to qualified immunity under the subjective prong in extraordinary circumstances. In *LeMaire v. Maass*, for example, we held that an inmate failed to show the prison official's culpable state of mind when the inmate had been denied opportunities for exercise based on the inmate's own misconduct, which had "raise[d] serious and legitimate security concerns within the prison." 12 F.3d at 1458. Here,

however, Warden Johnson's proffered justification does not rule out deliberate indifference. He claims that he restricted yard time for Unit 9 inmates to prevent the spread of COVID-19—a rational explanation. But viewed in the light most favorable to Cardenas-Ornelas, the non-movant, Warden Johnson's justification does not rule out deliberate indifference because there is conflicting evidence which shows Warden Johnson ordered Unit 9 to work despite the risk of COVID-19. Indeed, Cardenas-Ornelas presented evidence that Warden Johnson ordered Unit 9 inmates to work even when many Unit 9 inmates were symptomatic or had tested positive for COVID-19. Thus, there is a triable issue whether Warden Johnson acted with deliberate indifference when denying Unit 9 inmates yard time.

We therefore conclude that the district court properly denied qualified immunity on Cardenas-Ornelas's Eighth Amendment claim against Warden Johnson. Our holding, however, does not foreclose the trier of fact from making factual determinations which could result in the post-trial grant of qualified immunity on this claim for Warden Johnson.

**B.**

On the Fourteenth Amendment claim alleging a violation of equal protection, we conclude that Warden Johnson is entitled to qualified immunity. Because Cardenas-Ornelas does not allege any "classification [that] implicates a suspect class or infringes on a fundamental right," we review under the rational basis standard. *Bottinelli v. Salazar*, 929 F.3d 1196, 1201 (9th Cir. 2019). We consider whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification," *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993), including the

singling out of a "class of one," *Gerhart v. Lake County*, 637 F.3d 1013, 1023 (9th Cir. 2011). Defendants "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985). Cardenas-Ornelas bears the burden "to negative every conceivable basis which might support" the classification. *Beach Commc'ns*, 508 U.S. at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

On this claim, Cardenas-Ornelas did not establish a genuine dispute of material fact because he failed to introduce summary judgment evidence which ruled out every conceivable basis which might support the alleged differences in yard time afforded Unit 9 and other units, or Cardenas-Ornelas and other inmates. Namely, confirmed and suspected cases of COVID-19 infection in Unit 9 provided a possible justification for continuing to deny yard time for inmates in Unit 9 while reopening the yard to inmates in other units. This justification was not "so attenuated" from the goal of preventing the spread of COVID-19 at HDSP "as to render the distinction arbitrary or irrational." *City of Cleburne*, 473 U.S. at 446.

In denying qualified immunity on this claim, the district court erred by crediting allegations in the complaint which were unsworn and unsupported by evidence in the record. *See Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (holding that parties, even *pro se* inmates, cannot rely on "statements in [their] district court [briefing] as competent summary judgment evidence"). "Although we do not ordinarily have jurisdiction on an interlocutory appeal to review a denial of qualified immunity based on the existence of a disputed fact, 'when there is an *allegation* about the

conduct part of the equation, but insufficient *evidence* of that conduct to create a genuine issue of material fact, our cases permit review.'" *Foster v. City of Indio*, 908 F.3d 1204, 1217 n.10 (9th Cir. 2018) (per curiam) (alteration accepted) (quoting *Jeffers*, 267 F.3d at 907).

Cardenas-Ornelas alleged in his complaint that he heard "a number of officers" say that "Warden Johnson does not like protective segregation ('P.S.') inmates, and that this allows him to lock down the P.S. units." But that statement was not "based on personal knowledge" and did not "set[] forth the requisite facts with specificity," and thus could not "serve as an affidavit for purposes of summary judgment." *Moran v. Selig*, 447 F.3d 748, 759 n.16 (9th Cir. 2006). Further, Cardenas-Ornelas failed to "identify or submit some competent evidence," *Soto*, 882 F.3d at 872, to support his claim that Warden Johnson treated Unit 9 inmates differently based on a personal dislike of protective segregation inmates. Thus, the district court erred in concluding that Cardenas-Ornelas's "claims regarding Warden Johnson's dislike of protective segregation inmates and Defendants' failure to refute these claims" created a genuine dispute of material fact which precluded summary judgment. We accordingly reverse the district court's denial of qualified immunity to Warden Johnson on Cardenas-Ornelas's Fourteenth Amendment claim.

## CONCLUSION

We affirm the district court's denial of qualified immunity on the Eighth Amendment claim, reverse the district court's denial of qualified immunity on the Fourteenth Amendment claim, and we remand for further proceedings consistent with this opinion and the concurrently filed memorandum disposition.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**